.Dominick A. CORIGLIANO

v.

UNITED STATES of America, Defendant, Third Party Plaintiff,

v.

Edward M. WAVER, Third–Party Defendant.

Civ. A. No. 91–7376.

United States District Court, E.D. Pennsylvania.

June 22, 1993.

David Lyle Segal and Jeffrey H. Homel, Philadelphia, PA, for plaintiff.

Karl J. Fingerhood and Michael J. Salem, Trial Attys., Tax Div., U.S. Dept. of Justice, Washington, DC, for the U.S.

Edward M. Weaver, pro se.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff Dominick A. Corigliano commenced this action against the United States of America for a refund of a sum which he paid toward a federal tax assessment that had been levied against him by the Internal Revenue Service ("IRS"). The IRS made the assessment pursuant to 26 U.S.C. § 6672, based on its determination that Mr. Corigliano was a "responsible person" who had willfully failed to see that employment taxes had been collected and remitted to the govern-

ment for a portion of the taxable period ending September 30, 1989, by Generic Business Solutions, Inc. ("Generic"), a business of which Mr. Corigliano was an officer and shareholder. Mr. Corigliano denies that he was a "responsible person" pursuant to Section 6672 for that taxable period.

After Mr. Corigliano filed suit in this Court for recovery of his partial payment of the assessment, the United States filed a counterclaim against him, seeking to reduce to judgment the balance of the assessment against Mr. Corigliano, together with statutory interest. The United States also filed a third-party complaint against third-party defendant Edward M. Weaver. This third-party claim against Mr. Weaver is based on the IRS's determination that Mr. Weaver was also a responsible person pursuant to Section 6672 who had willfully failed to see that employment taxes were collected and remitted to the government by Generic. Mr. Weaver was an officer and the accountant of Generic. The assessment against him is based on the entire tax period ending September 30, 1993.

Mr. Weaver paid a portion of the assessment. In its third-party claim, the United States seeks to reduce to judgment the balance of the assessment against Mr. Weaver, together with statutory interest. In his answer, Mr. Weaver denies that he was a "responsible party" under Section 6672, and has requested judgment in his favor.

A non-jury trial was held before this Court on June 1, 1993 and June 2, 1993. On the basis of the evidence presented at trial, and for the reasons set forth below, this Court finds that, pursuant to 26 U.S.C. § 6672, neither Mr. Corigliano nor Mr. Weaver was a responsible person who willfully failed to collect and remit to the government the employment taxes withheld from the employees of Generic.

## FINDINGS OF FACT

Based on the evidence presented at trial, the Court makes the following findings of fact:

Generic was a corporation which provided computer software and hardware to various companies. It also provided maintenance of the software and hardware. Generic was founded in April, 1984, by Mr. Corigliano and Kenneth Owens. Mr. Owens is not a party to this suit. Mr. Corigliano and Mr. Owens each owned fifty percent of the corporation.

In 1986, two other shareholders were brought in, resulting in Mr. Corigliano retaining 30% ownership. Also at this time, Mr. Owens took over the management of the company. Management decisions were made by a committee of all shareholders (hereinafter cited "shareholder committee"), on a share-weighted basis, as established in the corporate by-laws. Mr. Corigliano was a member of the shareholder committee, and was in charge of sales and the supervision of the employees of the sales department. Mr. Owens, however, controlled the majority of votes of the shareholder committee.

In 1987, two more shareholders were added, resulting in Mr. Corigliano retaining 26% of the shares. He became president of Generic in 1988, but Mr. Owens continued to run the management of the company and to control the majority of votes of the shareholder committee. Further, Mr. Owens often acted on his own when a majority vote had gone against him. Generic, however, was making significant amounts of money, and relations on the shareholder committee remained amicable.

All shareholders received a salary plus benefits and bonuses. They also received "perks."

Generic had three bank accounts. Funds were kept in a money market account until transferred as needed into a general business account and a payroll account. Checks drawn on the general business account required the signature of two officers. Checks drawn on the payroll account required the signature of one officer. Generic did not maintain a separate account for payroll taxes.

Third-party defendant Edward Weaver was hired by Generic in December of 1986 as the accountant. He received a salary and benefits. He received one bonus of $200.00 that was given to him in lieu of a loan for which he had asked the shareholders. He received no "perks." Among his duties was

the preparation of a list of outstanding bills. This list was given to a shareholder, who was usually Mr. Corigliano, and was returned to him a few days later with highlighting on the bills that were to be paid. Mr. Weaver then paid those bills. It was his understanding that the determination of which bills were to be paid was made by the shareholder committee. Although Mr. Weaver had almost daily contact with members of the shareholder committee, he had no authority to determine which bills were to be paid. His recommendations as to which bills should be paid were limited to telling the shareholders which creditors had called about their accounts.

Although Mr. Weaver became the nominal treasurer of Generic in May of 1987, he had no stock in the company and was not a member of the shareholder committee, nor of any other board or committee. He was given the title of treasurer for check signing convenience: the bank required that only officers have check signing authority and there were many occasions when two shareholder-officers were not present to sign checks. He did not have authority to transfer funds from the money market account into either the general or payroll accounts. As stated heretofore, he did not have authority to determine which bills were to be paid.

Mr. Weaver did not have the authority to sign purchase orders and did not participate in any banking arrangements. Although he interviewed some applicants for employment and made recommendations to the shareholder committee, he had no authority to hire or set salaries of any employees of Generic. Although he solicited bids from companies for fire and health insurance coverage, he presented all bids to the committee with his recommendations and the committee made the relevant decisions. He made no decisions on collections of bad accounts receivables. Although he prepared tax returns and monthly financial statements, these were normal functions of the accounting department. As stated heretofore, he made no decisions as to which bills were to be paid or when. In short, Mr. Weaver had no control over the financial matters of Generic.

In April, 1989, Generic was late in making a payroll tax deposit. The tax deposits for May and June of 1989 were timely made. The tax deposit due July 14, 1989, however, was not made. Upon learning of the missed tax deposit, Mr. Corigliano called a meeting of the shareholder committee and stated that they must pay the taxes. The committee determined that sales would be sufficient to cover the taxes, and refused to take any action. When the sales were insufficient, Mr. Corigliano insisted that the taxes be made the first priority of payment and suggested ways of cutting costs, including cutting overhead and filing for bankruptcy. He also asked that the shareholders and employees miss a pay period. The shareholder committee overruled his suggestions. The shareholder committee then decided that the available funds would be used to pay the company's trade creditors rather than the government, in order for the company to continue in business. When Mr. Corigliano objected, he was told by the shareholder committee that if payment of the taxes were a priority to him, then it was up to him to find a solution. During this period, Mr. Owens remained in control of the shareholder committee.

Mr. Corigliano then began negotiations for a loan from a company engaged in the business of making loans. The sole purpose for Mr. Corigliano's negotiations with this company was to procure funds sufficient to pay the payroll taxes that were delinquent for the payroll period ending July 14, 1989, and to cover anticipated shortfalls for the payroll periods ending July 28, 1989 and August 11, 1989. Mr. Corigliano had the agreement of Mr. Owens that the proceeds of the loan would be used for the payment of the taxes for these payroll periods. Equipment of Generic was used as collateral for the loan.

After the July 14, 1989 taxes were not paid, Mr. Weaver, Generic's accountant, began to tell the shareholders almost daily that the taxes must be paid. He also warned them of the consequences of not timely paying the payroll taxes. As stated heretofore, during this period, Mr. Weaver did not have the authority to write checks in payment of the taxes, nor did he have the authority to

transfer funds from the money market account with which to pay the taxes.

Mr. Corigliano made the arrangements for the loan and instructed Mr. Weaver that when the loan proceeds arrived, they were to be used to pay the delinquent taxes. The loan proceeds were to be approximately $40,000.00, which was more than sufficient to cover the amount of the taxes for the July 14th, July 28th and August 11th payroll periods.

Anticipating further money shortages, Mr. Corigliano arranged a meeting between himself, Mr. Owens, Generic's attorney, and a bankruptcy attorney to discuss corporate bankruptcy. The meeting was held on August 8, 1989. That morning, before attending the meeting, Mr. Corigliano signed the payroll checks for the payroll period ending August 11, 1989. After the meeting, Mr. Owens informed Mr. Corigliano that bankruptcy was not an alternative, and further told him that the loan proceeds would not be used to pay the delinquent payroll taxes but would be used, instead, to pay a trade creditor in order to keep Generic in business. As stated heretofore, Mr. Owens remained in control of the shareholder committee.

Mr. Corigliano knew that, despite the fact that he had negotiated the loan for Generic for the specific purpose of paying the payroll taxes, he had no authority to go forward on his own to use the loan proceeds to pay the taxes. After being informed by Mr. Owens that the taxes would not be paid from the loan proceeds, Mr. Corigliano determined that he had nowhere else to find additional money, and therefore had no alternative but to resign from Generic. The next day, on August 9, 1989, Mr. Corigliano delivered his letter of resignation to Mr. Owens. After receipt of his letter of resignation, Mr. Corigliano had no decision-making authority in Generic.

The funds from the loan were received on August 23, 1989, approximately two weeks after Mr. Corigliano resigned. As of this date, payroll taxes were delinquent for the pay periods ending July 14, July 28 and August 11, 1989. After receipt of the loan proceeds, Generic's bank account carried balances in excess of the amounts owed for the delinquent payroll taxes for the rest of the month of August, 1989.

The loan proceeds were not used to pay the delinquent payroll taxes but, instead, were used to continue the operations of Generic and to pay creditors. Mr. Weaver was on vacation when the loan proceeds were received by Generic and when the proceeds were used to pay creditors. When Mr. Weaver returned from vacation, he resumed signing payroll checks. However, as stated heretofore, although the payroll account required only one signature, Mr. Weaver at no time possessed the authority to pay the taxes, nor did he possess the authority to transfer funds from the money market account to the payroll account for the payment of the taxes.

Mr. Corigliano sold his stock to Generic for $262.50 plus indemnification against corporation liabilities including the delinquent taxes, and a continuation of his salary and benefits for one year. The buy-out agreement was not executed until November 1, 1989, because Mr. Corigliano and Mr. Owens could not agree on a non-competition clause. The one-year salary and benefits continued until October, 1989, and thereafter, were not paid.

Generic continued in business until January, 1991, although it filed for and operated under bankruptcy protection from May, 1990 until January, 1991. Mr. Weaver continued to be employed by Generic until it ceased doing business.

## CONCLUSIONS OF LAW

26 U.S.C. § 6672(a) provides:

Failure to Collect and Pay Over Tax, Attempt to Evade or Defeat Tax.

(a) General Rule. Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

As stated by the Third Circuit in *Brounstein v. United States,* 979 F.2d 952, 954 (3d Cir.1992), once the government introduces a certified copy of an assessment to the district court, the burden shifts to the plaintiff of coming forward with evidence showing that the assessment against him is incorrect by establishing either (1) that he was not a responsible person within the meaning of the statute, or (2) that he did not willfully fail to pay the amount due to the government.

As the Third Circuit stated, *id.* (citations omitted):

A responsible person under section 6672(a) is a person required to collect, truthfully account for or pay over any tax. "Responsibility is a matter of status, duty, or authority, not knowledge." While a responsible person must have significant control over the corporation's finances, exclusive control is not necessary. In determining whether an individual is a person responsible for paying over a tax, courts also consider (1) contents of the corporate bylaws, (2) ability to sign checks on the company's bank account, (3) signature on the employer's federal quarterly and other tax returns, (4) payment of other creditors in lieu of the United States, (5) identity of officers, directors, and principal stockholders of the firm, (6) identity of individuals in charge of hiring and discharging employees, and (7) identity of individuals in charge of the firm's financial affairs.

Willfulness is "a voluntary, conscious and intentional decision to prefer other creditors over the Government." *Id.* at 955–956, quoting *Quattrone Accountants, Inc. v. IRS,* 895 F.2d 921, 928 (3rd Cir.1990). A responsible person acts willfully when he pays other creditors in preference to the IRS knowing that taxes are due, or with reckless disregard for whether taxes have been paid. *Id.*

As stated by the Third Circuit in *Brounstein,* 979 F.2d at 954, a responsible person must have significant control over the corporation's finances. The undisputed evidence presented at trial establishes that, although Mr. Corigliano became president of Generic in 1988, all financial decisions of the corporation were made by the share-weighted majority vote of the shareholder committee, which committee was controlled by Mr. Owens. When it was made clear to Mr. Corigliano by the shareholder committee, controlled by Mr. Owens, that the delinquent taxes for July 14, 1989, would not be paid, it was Mr. Corigliano who presented the committee with alternatives for raising the funds needed to pay the taxes, including skipping a paycheck and cutting overhead. When the committee refused to accept these alternatives, Mr. Corigliano negotiated a loan, the proceeds of which were sufficient to pay all of the delinquent payroll taxes for the payroll periods of July 14, July 28 and August 11, 1989. When Mr. Owens informed Mr. Corigliano on August 8, 1989, that the loan proceeds would be used to pay trade creditors instead of the IRS, Mr. Corigliano was powerless to force Mr. Owens and the committee to use the funds to pay the taxes, and further, was powerless to himself use the funds to pay the taxes. He therefore resigned from a business of which he was a founding partner.

Although the actual separation agreement was not signed until November, 1989, due to disagreements over a non-competition clause, and although Mr. Corigliano did perform some duties until November, 1989, he had no decision-making authority as to the financial matters of Generic after handing in his resignation on August 9, 1989. When the loan proceeds came in on August 23, 1989, the funds were used to pay trade creditors. This was pursuant to the direction of Mr. Owens, who remained in control of the shareholder committee, and contrary to Mr. Corigliano's express wishes.

On the basis of substantial evidence presented at trial, this Court finds that Mr. Corigliano procured sufficient funds specifically for the purpose of paying Generic's tax delinquencies but, having no control over the corporation's finances, he had no power to see that the loan proceeds were so used. The Court therefore finds that he has carried his burden of proving that he was not a "responsible person" pursuant to Section 6672, as he did no control over the corporation's finances as concerns the payment of

the taxes for the payroll periods of July 14, July 28, and August 11, 1989.

In making this finding, the Court has carefully considered the factors listed in *Brounstein* and quoted heretofore. Although Mr. Corigliano would appear to fit many of the factors, in that he had the ability to sign corporate checks, was an officer and principal stockholder of the corporation, had the authority to hire and fire employees, and was an individual who by share-weighted vote was in charge of the firm's financial affairs; still, as set forth above, this Court finds that he has clearly carried his burden of proving that he had no control over Generic's finances in connection with the payment of the taxes for the payroll periods of July 14, July 28, and August 11, 1989. Therefore, pursuant to *Brounstein*, this Court finds that Mr. Corigliano has carried his burden of proving that he was not a responsible person pursuant to Section 6672 in connection with Generic's failure to pay the payroll taxes for the payroll periods ending July 14, July 28 and August 11, 1989.

■ Although a plaintiff's burden is to prove either (1) that he was not a responsible person within the meaning of the statute, or (2) that he did not willfully fail to pay the amount due to the government, the Court further finds that Mr. Corigliano has also carried his burden of proving that he was not willful in any failure to pay over the taxes. As stated heretofore, when Mr. Corigliano determined that he was powerless to prevent the expenditure of corporate funds in paying trade creditors instead of the IRS, he attempted to insure payment of the taxes by negotiating a loan with sufficient proceeds to pay all delinquent taxes. Despite his efforts, however, Mr. Corigliano had no authority to prevent the loan proceeds from being used to pay trade creditors, or to use other corporate funds to pay the taxes. When it was made clear to Mr. Corigliano that the proceeds of the loan would not be used to pay the taxes, he resigned from a corporation of which he was a founding member. This Court finds that Mr. Corigliano did not pay other creditors in preference to the IRS, or with reckless disregard for whether the taxes had been paid. On the contrary, this Court finds

that Mr. Corigliano has carried his burden of proving that he did not "intentionally and consciously fail[ ] to pay over to the IRS the withholding and employment taxes due...." *Brounstein*, 979 F.2d at 956.

■ Further, the undisputed evidence at trial establishes that Mr. Weaver did not have significant control over Generic's finances. In fact, the evidence shows that Mr. Weaver had no control over Generic's finances. As stated heretofore, all financial decisons of the corporation were made by the share-weighted majority vote of the shareholder committee. Mr. Weaver owned no shares in Generic, and did not sit on the shareholder committee in any capacity. Although Mr. Weaver was the nominal treasurer, this was for check-signing convenience only, since the officer-shareholders were often out of the office. The designation as treasurer included no "status, duty, or authority," *Brounstein*, 979 F.2d at 954, to determine the financial affairs of Generic.

Although Mr. Weaver had the ability to sign checks on Generic's general and payroll account, he had no decision-making authority as to which bills were to be paid. His check-signing ability was for the convenience of the shareholders only, since they were often out of the office. Although Mr. Weaver made up a list of outstanding bills, he had no authority to determine which bills were to be paid. Instead, the list was submitted to the shareholder committee, which made all decisions as to which bills were to be paid and then returned the list to Mr. Weaver with the bills to be paid highlighted. Corporate moneys were kept in a money market account and transferred to the general or payroll account as needed for the payment of bills. Mr. Weaver, however, had no authority to transfer funds from the money market account to the general or payroll account. Mr. Weaver, thus, had no ability to determine to pay creditors instead of the United States.

Although he interviewed a few prospective employees and gave his recommendations on them to the shareholder committee, he had no authority over the hiring and firing, nor over the setting of salaries of any employees. Although he solicited bids for health and fire insurance, he simply compiled the bids and

gave them all to the shareholder committee, which chose the policies.

Thus, pursuant to the factors listed in *Brounstein* and quoted heretofore, Mr. Weaver cannot be deemed to have had any control over Generic's financial affairs in connection with Generic's failure to pay the payroll taxes for the payroll periods ending July 14, July 28 and August 11, 1989. *See also Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921 (3rd Cir.1990) (party is responsible who had the authority to pay bills without prior approval, with only limitation that he present paid bills during following month; and who provided financial advice). The Court finds, therefore, that Mr. Weaver has carried his burden of proving that he was not a responsible person pursuant to Section 6672 in connection with Generic's failure to pay the payroll taxes for the payroll periods ending July 14, July 28 and August 11, 1989.

■ Further, this Court finds that Mr. Weaver has also carried his burden of proving that he did not willfully fail to account for and pay over the withholding taxes. As stated heretofore, after the July 14, 1989 payroll taxes were not paid, Mr. Weaver continued almost daily to tell the shareholders that the taxes must be paid, and to warn them of the consequences of not timely paying the taxes. Nevertheless, the shareholder committee—of which Mr. Weaver was not a part and in which he had no voice—determined to pay trade creditors instead of the IRS. Although Mr. Weaver did make out and sign checks to creditors while the taxes remained delinquent, it was the shareholder committee that determined which bills were to be paid. Mr. Weaver had no authority to determine which bills were to be paid, nor did he have the authority to transfer funds for the payment of bills from the money market account to the general or payroll account. Thus, this Court finds that Mr. Weaver has carried his burden of proving that he did not "intentionally and consciously fail[ ] to pay over to the IRS the withholding and employment taxes due...." *Brounstein*, 979 F.2d at 956. *See Quattrone*, 895 F.2d at 928 (responsible party determined to have willfully failed to pay taxes when he had such influence that he could have paid the taxes and no one would have questioned it).

## CONCLUSION

This Court, having found that both Mr. Corigliano and Mr. Weaver have carried their burdens of proving by a preponderance of the evidence that they were not responsible persons within the meaning of Section 6672, and further, this Court having found that they have proved that neither willfully failed to pay over to the government the taxes due by Generic for the taxable periods ending July 14, July 28 and August 11, 1989, this Court will enter judgment for plaintiff Dominick A. Corigliano and against defendant United States of America, and will also enter judgment for third-party defendant Edward M. Weaver and against third-party plaintiff United States of America.

## *ORDER*

AND NOW, this 22nd day of June, 1993; for the reasons set forth in the Court's Memorandum dated June 22, 1993;

IT IS ORDERED: on the claim of plaintiff Dominick A. Corigliano against defendant United States of America for a refund of six thousand, nine hundred seventy five dollars ($6,975.00), which is the amount he has paid on the assessment made against him pursuant 26 U.S.C. § 6672, plus statutory prejudgment interest and statutory post-judgment interest thereon, if any, JUDGMENT IS ENTERED for plaintiff Dominick A. Corigliano and against defendant United States of America.

IT IS FURTHER ORDERED: on the counterclaim of defendant United States of America against plaintiff Dominick A. Corigliano, JUDGMENT IS ENTERED for plaintiff Corigliano and against defendant United States of America.

IT IS FURTHER ORDERED: on the cross-claim of third-party plaintiff United States of America against third-party defendant Edward M. Weaver, JUDGMENT IS ENTERED for third-party defendant Edward M. Weaver and against third-party plaintiff United States of America. Third-party plaintiff United States of America shall

refund to third-party defendant one hundred dollars ($100.00), which is the amount he has paid on the assessment made against him pursuant to 26 U.S.C. § 6672, plus statutory pre-judgment interest and statutory post-judgment interest thereon, if any.